# EXHIBIT A

Government's Exhibit

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> LEONARDO HENDERSON, ) <br> ) <br> Defendant. ) <br> _____ ) | No.: CR 05-0609 JSW <br><br> **ORDER OF DETENTION** <br> **PENDING TRIAL** |

## I. INTRODUCTION

Defendant Leonardo Henderson was arraigned on an indictment charging him with being a felon in possession of a firearm on May 11, 2006 before the Honorable Elizabeth D. Laporte, United States Magistrate Judge. At the request of the government upon its proffer of a serious risk that the defendant would flee based on his attempt to elude arrest when police sought to affect a traffic stop of a car in which he was a passenger holding a gun, the Court ordered a detention hearing. See 18 U.S.C. § 3142(f)(2)(A). On May 18, 2006 at 9:30 a.m., the Court held the detention hearing. The defendant was present and represented by Geoffrey Hansen, Assistant Federal Public Defender. Assistant United States Attorney Gregg W. Lowder represented the United States.

Pretrial Services submitted a report recommending detention, based upon both a serious risk that the defendant would flee and that the risk of danger to the community or persons in the

1 community. Among other factors, Pretrial Services pointed to the defendant's numerous
2 criminal convictions, several of which involved violence; the defendant's repeated parole and
3 probation violations, many of which involved new criminal conduct; the bench warrants issued
4 for the defendant, which might indicate a failure to appear as ordered, although other
5 explanations were possible as well; and the defendant's failure to abide by the conditions of his
6 current parole.

7 Upon consideration of the Pretrial Services report, proffers of the government orally and
8 in writing and arguments of counsel, the Court finds by a preponderance of evidence that there
9 exists a serious risk the defendant will flee if released and that no condition or combination of
10 conditions of release will reasonably assure the appearance of the defendant as required. On this
11 basis the Court orders the defendant detained.

12 The Court additionally finds by clear and convincing evidence, based upon the Pretrial
13 Services report, proffers of the government and arguments of counsel, that the defendant's
14 release will endanger the safety of other persons and the community and that no condition or
15 combination of conditions of release will reasonably assure the safety of other persons and the
16 community. This finding of dangerousness presents a separate, independent basis for detention.
17 The Court also orders the defendant detained on this basis. Even if the Court did not also find
18 danger, however, the Court would detain the defendant based on flight risk alone.

19 The present order supplements the Court's findings at the detention hearing and serves as
20 written findings of fact and statement of reasons as required by 18 U.S.C. section 3142(i).

21 **II.  DISCUSSION**

22 The Court first must decide two threshold issues raised by the defendant: whether the
23 Court may consider the issue of danger to the community even though the defendant has not
24 been charged with a crime of violence or other grounds under section 3142(f)(1) and the
25 detention hearing was triggered by the risk of flight alone; and whether this defendant has a right
26 to have the government proceed through live testimony rather than proffer and to cross-examine

the government's witnesses.

### A. The Court Must Consider Evidence Of Danger And May Order Detention On The Alternate Ground That The Defendant Poses A Danger To The Community Even Where The Sole Basis For Requesting A Detention Hearing Was Flight Risk.

The defendant argues that this Court is prohibited from considering evidence of the danger to the community that he might pose and from detaining him based on that ground because the Government requested a detention hearing on the ground of flight risk alone, and because he was not charged with a crime of violence or any other of the specified grounds set forth in section 3142(f)(1). Neither the Bail Reform Act of 1984, 18 U.S.C. sections 3141-50, nor case law in the Ninth Circuit dictates that result.

The Bail Reform Act requires courts to hold a detention hearing under certain enumerated circumstances, including "upon motion of the attorney for the Government in a case that involves . . . a crime of violence . . . or . . . a serious risk that such person will flee." 18 U.S.C. § 3142(f). The purpose of the hearing is to determine whether any release conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . ." Id. The defendant here was not charged with a crime of violence or eligible for a detention hearing on other grounds set forth in section (f)(1). Rather, the government moved for pretrial detention and the Court agreed to set a detention hearing solely on the serious risk that the defendant will flee.

Section 3142(g) sets forth mandatory factors that the Court must consider in a detention hearing:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning–(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including– . . . past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether at the time of the current offense or arrest, the person was on [release] pending trial, sentencing, appeal or completion of a sentence for [another offense]; and (4) the nature and seriousness of the danger to any person or

Detention Order: Leonardo Henderson  3

the community that would be posed by the person's release. . . .

Thus, a plain reading of this statute requires the Court to consider all these factors at a detention hearing even though the defendant was not charged with a crime of violence. The statute does not indicate that only certain factors should be examined depending on the ground for the hearing. Rather, it instructs courts to consider all the factors set forth. If Congress intended courts only to consider the factor of danger to the community in cases where a detention hearing was set on the grounds set forth in sub-section (f)(1), it could have said so. Further, by restricting the circumstances in which a hearing may properly be held and then requiring release of all other defendants, the statute narrows the category of defendants eligible for detention.

   Defendant relies on cases from the First and Third Circuits holding that a court may not order pretrial detention on grounds of danger alone when the detention hearing was set based on flight risk and not danger. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988); United States v. Himler, 797 F.2d 156 (3d Cir. 1986). The government mistakenly argues that in these cases, the United States did not seek a detention hearing on the ground of risk of flight. In Ploof, the government moved for a hearing under both (f)(1) and (f)(2), but the court detained the defendant only on the ground that he was a danger to the community. 851 F.2d at 10. In Himler, the government moved for detention on risk of flight, and while the magistrate judge detained the defendant on both flight and danger, the district court affirmed the detention order solely on danger and made no finding on flight. 797 F.2d at 158. In another case the defendant relies on, United States v. Byrd, 969 F.2d 106, 107 (5th Cir. 1992), the Fifth Circuit cited Ploof and Himler before concluding that a "detention hearing can only be held in a case that involves a crime or circumstance set out in § 3142(f) of the [Bail Reform] Act." Id. at 110. Unlike in Ploof and Himler, however, the parties in Byrd had stipulated that the defendant was not a flight risk, and although the government moved for detention on grounds that the defendant was a danger to the community, it failed to offer any evidence of danger at the hearing.

   Defendant correctly points out that the Ninth Circuit in United States v. Twine concluded

Detention Order: Leonardo Henderson    4

1 that a defendant charged as a felon in possession, which it determined was categorically not a
2 crime of violence, could not be detained based solely on a finding of dangerousness, without
3 reference to any of the triggers for a detention hearing.  344 F.3d 987 (9th Cir. 2003) (citing
4 Byrd, Ploof, and Himler).  In Twine, however, the Court did not necessarily need to reach the
5 question presented here of whether, when a detention hearing of one accused of being a felon in
6 possession is triggered by risk of flight, a clear and convincing showing of dangerousness may
7 support detention at the hearing.  In Twine, the magistrate judge had not specified whether the
8 hearing was triggered by flight or danger, and ordered the defendant detained based on danger
9 alone.  The district court upheld the detention based on danger to the community and also held
10 alternatively that the crime charged was a crime of violence.  344 F.3d at 987.  Neither the
11 magistrate judge nor the district court judge made a finding that the defendant posed a serious
12 risk of flight.  The Ninth Circuit reversed on both grounds, holding that the crime of felon in
13 possession categorically is not one of violence for purposes of the Bail Reform Act, without
14 addressing whether a hearing could have been triggered by flight risk.  Thus, Twine did not
15 address the mandatory language of section 3142(g) requiring consideration at bail hearings of the
16 potential danger to the community in the context of a detention hearing based on flight.

      **B.    Absent Any Indicia Of Unreliability, The Court May Rely On Proffers Offered At The Detention Hearing.**

19       The defendant also argues that he is entitled to cross-examine witnesses under both the
20 Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth
21 Amendment.  First, the Court concludes that no such right exists under the Sixth Amendment.
22 Under the Confrontation Clause, criminal defendants have the right to confront "testimonial"
23 witnesses during their criminal prosecution.  See Crawford v. Washington, 541 U.S. 36 (2004).
24 By contrast, a detention hearing under the Bail Reform Act is a regulatory proceeding, not a
25 penal one.  See United States v. Salerno, 481 U.S. 739, 746 (1987); see also United States v.
26 Perry, 788 F.2d 100, 117 (3d Cir. 1986) ("Although the preventive detention determination is

Detention Order: Leonardo Henderson      5

1  made incidental to a criminal prosecution, commitment on the basis of dangerousness to the
2  community is civil, not criminal").  Moreover, the Ninth Circuit has squarely held that "the
3  government may proceed in a detention hearing by proffer or hearsay."  United States v. Winsor,
4  785 F.2d 755, 756 (9th Cir. 1986) (citing United States v. Cardenas, 784 F.2d 937, 938 (9th Cir.
5  1986)); see also United States v. Littlesun, 444 F.3d 1196, *8 (9th Cir. 2006) ("Crawford speaks
6  to trial testimony, not sentencing").

7  Second, even the cases that the defendant cites emphasize that courts have discretion
8  whether to accept proffers or require live testimony and cross-examination, and generally only
9  go beyond proffers when circumstances indicate that the proffers are insufficiently reliable on
10 crucial points.  See United States v. Hammond, 44 F. Supp. 2d 743, 746 (D. Md. 1999) ("[C]ase
11 law supporting detention upon government proffers in no way requires a judicial officer to
12 accept or accredit proffered evidence, nor does that case law assume that proffers in lieu of live
13 testimony are appropriate in every case [but it] supports the discretion of the reviewing judicial
14 officer to require the presentation of evidence. . . ."); United States v. Comito, 177 F.3d 1166,
15 1168, 1171-72 (9th Cir. 1999) (district court should have afforded opportunity for cross-
16 examination where defense counsel proffered based on interview of key witness whose original
17 hearsay accusations formed the basis for an increased penalty for supervised release violation
18 that the witness had recanted and admitted that she had lied to police).

19 Thus, although there may indeed be circumstances where a defendant has a limited right
20 to due process to cross-examine because the government's proffer is unreliable, no such
21 circumstances exist here.  During the detention hearing, the Court asked whether the defendant
22 had any factual basis for arguing that the government's proffers were unreliable.  The
23 defendant's counsel declined the opportunity to make a proffer on this point, arguing instead that
24 requiring a defendant to do so as a prerequisite for cross-examination would violate his right
25 against self-incrimination, particularly when a defendant and the arresting officers were the sole
26 witnesses.  The Court questions whether there might not be some other indicia of unreliability

Detention Order: Leonardo Henderson         6

1  that a defendant could proffer, such as a prior history of inaccurate statements by a particular
2  arresting officer.  In any case, here, in addition to the arresting officers, government proffered
3  that two other witnesses, the driver and another passenger, were in the car when police attempted
4  to stop the vehicle and these witnesses told the police that the defendant told the driver not to
5  stop because he had an outstanding warrant.  The defense could have interviewed these
6  percipient witnesses and if their accounts cast doubts on the accuracy of the government's
7  proffer, made a proffer on that basis.  The defense did not do so.  The defendant accordingly has
8  given this Court no reason to suspect that the government's proffer was unreliable.

### C. Balancing the 18 U.S.C. section 3142(g) Factors

As stated above, the Bail Reform Act of 1984 sets forth four factors which the Court must consider in determining whether pretrial detention is warranted.  These factors are paraphrased as follows:

> (1) the nature and seriousness of the offense charged;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person including, among other considerations, employment, past conduct and criminal history, and records of court appearances; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

With regard to the first factor, the nature and seriousness of the offense charged, although it is not itself a crime of violence, it is a serious offense in light of the defendant's efforts to avoid detection and his background of four convictions for violent crimes in little more than ten years.  The nature of the offense is reflected in the oral and written proffers of the government.  The proffers indicate that uniformed police officers in a marked patrol car used their lights and

Detention Order: Leonardo Henderson      7

sirens to attempt to stop a car shortly after midnight for several Vehicle Code violations. The police followed the car for several blocks with its lights and sirens on, but the car did not yield. The car slowed at one point and the defendant opened the rear passenger door and started out, but, seeing the police, got back in the car and closed the door. The car proceeded on, eventually going several blocks. The defendant did the same thing a second time as the car again slowed down but did not stop. The car turned a last corner and continued on, then stopped near mid-block. The defendant again opened the rear door, got out and started running. Two officers chased the defendant on foot and, while right behind the defendant, saw him reach into his waistband area and pull out a handgun and throw it. One officer stopped and recovered the handgun, which was loaded. The foot chase continued until an officer drew a firearm on the defendant. The defendant stopped and dropped to his knees. He put his left hand in his waistband area. Officers immediately grabbed each arm. The defendant resisted the pulling of his left hand out of his waistband, a struggle ensued and the defendant was ultimately overcome and arrested. The defendant was determined to have an outstanding parole violation warrant.

Police interviewed the driver and the front passenger of the car after giving them their *Miranda* rights, and both gave statements. The front passenger, Jerri Martin, stated that they had just been picked up the defendant at a Bart Station when the police attempted to stop their car. The defendant ordered her boyfriend, the driver of the car, not to pull over because the defendant had a warrant. The driver, Juan Daniel Rodriguez, told the police a similar story and added that as he started to pull over, he saw the defendant pull a firearm from his waist and the defendant told Rodriguez to keep going because he had a warrant. While the defendant was preparing to get out of the car, Rodriguez saw the defendant trying to put the gun under the seat. Rodriguez told the defendant that he had to take his gun with him.

The Court finds these facts significant to the detention decision because, among other things, they indicate that the defendant knew he had a warrant out for his arrest and did not surrender himself. Rather, his reaction upon encountering police was to flee to avoid capture by

Detention Order: Leonardo Henderson     8

1 the police and to resist when ultimately captured. His resistance upon capture was consistent
2 with his record for convictions of battery upon public safety officials, as discussed below. This
3 conduct alone supports a finding by a preponderance of the evidence that the defendant poses a
4 risk of flight. The Court also finds that the struggling and resistance of the defendant when
5 caught, given the circumstances in which he knew he had a parole warrant, in conjunction with
6 his criminal history discussed below, supports by clear and convincing evidence that the
7 defendant is a danger to the community.

8       The second factor of the weight of the evidence points slightly in favor of detention. <u>See</u>
9 <u>Winsor</u>, 785 F.2d at 757. However, it is the least important factor to be considered. <u>See</u>
10 <u>Cardenas</u>, 784 F.2d at 939.

11       The third factor, the defendant's history and characteristics, provide further evidence that
12 he is a flight risk as well as a danger to the community. Defendant's criminal history is
13 particularly informative. Based on the Pretrial Services report, the defendant has had a long,
14 essentially continuous history of criminal conduct resulting in convictions followed by probation
15 and parole violations. Since 1993, the defendant has suffered seven convictions on six different
16 dates. Four convictions, each on a separate date, involved elements of violence, including one
17 conviction for robbery, two convictions for battery on police or emergency personnel, and his
18 most recent conviction, in 2003, for battery involving domestic violence. The defendant has
19 performed poorly on probation, having his grants of probation modified eight different times to
20 add additional custodial time, and having his probation revoked four times. Both of the
21 defendant's grants of probation following felony convictions resulted in revocations and
22 sentences to prison.

23       The government proffered that the defendant also performed poorly on parole, having his
24 parole revoked at least four times, in 1998, 1999, 2000 and 2002. His 2002 parole revocation
25 was then followed in 2004 by the revocation of his felony probation and another prison
26 commitment. At the time of his arrest in this case, the defendant had an outstanding parole

Detention Order: Leonardo Henderson      9

warrant. The defendant's parole officer was interviewed for the Pretrial Services report and stated that the defendant failed to report on parole and left a program, and the officer opined that the defendant's parole performance was "extremely poor." The defendant's criminal history, as reflected in the Pretrial Services report, also indicated that he had several bench warrants issued for him in 2003 and 2004.

The defense argued the defendant had no proven failures to appear, and poor performance on probation or parole fails to bear on whether the defendant would appear as required. The Court believes that the defendant's lack of amenability to supervision is acutely demonstrated by his probation and parole performance and that the defendant's pattern of failure to adhere to conditions of release creates an enhanced risk in the future that he will not appear as required, whether or not he has done so in the past. In short, the defendant's history indicates that he lacks the kind of reliability that would reasonably assure the defendant's appearance as ordered or the safety of the community. In conclusion, the Court finds by a preponderance of evidence that no conditions or combination of conditions will reasonably assure the defendant's appearance as required, based on both the defendant's attempt to elude and resist arrest in connection with the current offense and his outstanding parole warrant, as well as his criminal history. The Court also finds, based on the defendant's history, his characteristics and his resistance to arrest, by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community. On each basis the Court orders the defendant detained.

Accordingly, pursuant to 18 U.S.C. § 3142(i), IT IS ORDERED THAT:

(1) the defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) the defendant be afforded reasonable opportunity for private consultation with his counsel; and

Detention Order: Leonardo Henderson      10

1  (3) on order of a court of the United States or on request of an attorney for the
2  government, the person in charge of the corrections facility in which the defendant is confined
3  shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any
4  appearance in connection with a court proceeding.

Dated: May 31, 2006

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge